KEY v. WITHERS & WELLFORD.

(Division B. Jan. 12, 1931. Suggestion of Error Overruled, Jan. 26, 1931.)

[131 So. 868. No. 29041.]

W. S. Watson, of Greenville, for appellant.

**Percy Bell,** of Greenville, for appellee.

Argued orally by **Percy Bell,** for appellee.

**Anderson, J.,** delivered the opinion of the court.

The appellees brought this action against the appellant in the county court of Washington county to recover the invoice price of certain petroleum products delivered by appellees to the appellant, under a written contract entered into between the parties. There was a trial before the county judge, sitting as both judge and jury, result-

ing in a judgment in appellant's favor. From that judgment appellees appealed to the circuit court, where the judgment of the county court was reversed. Following the procedure laid down by the county court statute (Code 1930, section 704), a final judgment was entered in the circuit court for appellees, from which judgment appellant prosecutes this appeal.

On August 6, 1925, appellant and appellees entered into a written contract, the pertinent parts of which were as follows:

"1. The First Party (appellees) agrees to deliver to the Second Party (appellant) from time to time such goods, wares and merchandise, consisting of gasoline, kerosene, lubricating oils, greases and other petroleum products, as in its judgment, may see fit, and the Second Party agrees to receive and accept possession of the said goods, wares and merchandise, upon the terms and conditions hereinafter stated.

"2. The Second Party agrees to receive and accept possession of the said goods, wares and merchandise from the First Party and to hold and care for the same as the property of the First Party, it being expressly agreed that the title to said goods, wares and merchandise or of the proceeds thereof, shall always be vested in the First Party, and such merchandise shall be, at all times, subject to and under the control of the First Party. The title to the said goods, wares and merchandise shall pass directly from the First Party to such person, or persons, to whom the same shall be sold, in the manner and upon the terms set forth.

"3. The Second Party shall keep said wares, goods and merchandise fully insured against loss or damage by reason of fire, for the benefit of and in the name of the First Party with a solvent fire insurance company or companies approved by the First Party as insurer or insurers.

"4. The Second Party agrees to:

"(a) Sell such goods, wares and merchandise to such person or persons as it shall judge to be of good credit and business standing, and,

"(b) Collect for, and in behalf of, the First Party all bills and accounts for the goods, wares, and merchandise so sold, and,

"(c) On or before the 1st day of each and every calendar month hereafter to render to First Party an account of statement showing all such goods, wares and merchandise delivered to and received by the Second Party as herein provided during the preceding calendar month, the amount thereof on hand at the end of the preceding calendar month, and the names and addresses of any person or persons to whom any of such goods, wares and merchandise may have been sold by the Second Party during the preceding calendar month, together with the amount and character of such merchandise so sold, the consideration received or agreed to be paid therefor and how evidenced, and such other information pertaining to the sale or other disposition of such goods, wares and merchandise as the First Party may from time to time require, and at or before the times provided for making said report, account or statement, to pay to the First Party any amount collected as aforesaid, less, however, the difference between the price at which the goods, wares and merchandise so collected for shall have been invoiced to the Second Party, less any discounts from invoice prices which may have been allowed by the First Party, and the price at which said goods, wares and merchandise shall have been sold as aforesaid by the Second Party.

"5. The Second Party hereby guarantees the payment of all bills and accounts for goods, wares and merchandise, possession of which may be delivered to the Second Party hereunder and which may have been sold by the Second Party under this agreement; and the Second

Party hereby agrees that, if any goods, wares or merchandise delivered hereunder by the First Party to the Second Party shall not be accounted for to the First Party in accordance with the provisions of clause '4' of this agreement next above, the Second Party will pay to the First Party on or before the —————— day of the next calendar month subsequent to that in which said goods, wares and merchandise were delivered to and received by the Second Party, the invoice price thereof, less any discounts from invoice price which may have been allowed by the First Party; thereupon the title to said goods, wares and merchandise so paid for, or to the proceeds thereof shall vest in the Second Party, and be exempt from the provisions of this agreement.''

Appellant defended the action upon the ground that the petroleum products, the invoice price of which was sued for, were destroyed by the act of God at a time when appellant had not become indebted to appellees for their invoice price, and therefore the loss fell upon appellees, and not upon appellant; the title to the goods being in appellees at the time of the loss. According to appellant's evidence, the goods were destroyed by the flood of April, 1927. The county judge, sitting as judge and jury, found the material facts in appellant's favor, and rendered judgment dismissing appellees' suit.

In the trial of the cause the circuit court sat as a court of appeals, the record on appeal in the circuit court being the record of the cause made in the county court. The findings of a county judge, sitting as both judge and jury on issues of fact, are entitled to the same weight on an appeal to the circuit court as is the verdict of a jury. The county court, in order to render the judgment it did render, necessarily found as a fact that the goods involved were destroyed by an act of God, for which appellant was not responsible, and that at the time of their destruction, they were the property of appellees, and not of appellant; and appellant had not become indebted to

appellees for their invoice price, and therefore the loss fell upon the former, and not upon the latter. On appeal to the circuit court, that court, while necessarily accepting as true the findings of fact of the county court, found the law of the case in appellees' favor, and rendered judgment accordingly.

Appellees seek to justify the judgment of the circuit court under paragraph 5 of the contract, in connection with subdivision (c) in paragraph 4 of the contract. The latter provision is, in substance, as follows: Appellant, by the contract, bound himself on the first day of every calendar month to make reports of the amount of goods on hand at the end of the preceding calendar month, the names and addresses of any person or persons to whom any of such goods had been sold by appellant during the preceding calendar month, together with the amount and character of the goods sold, the consideration received or agreed to be paid therefor, and how evidenced; and such other information pertaining to the sale or disposition of goods as appellees might from time to time require of appellant; and make the payments to appellees as provided in the contract. Section 5 of the contract provides, among other things, that if the monthly reports are not made by appellant in accordance with the provisions of section 4 of the contract, appellant will pay to appellees on or before the —— day of the next calendar month subsequent to that in which the goods were delivered to, and received by, appellant, the invoice price thereof, less discount, etc. "Thereupon the title to said goods, wares and merchandise so paid for, or to the proceeds thereof, shall vest in the second party (appellees), and shall be exempt from the provisions of this agreement." Appellees' contention is that appellant failed to make the monthly reports provided for in the contract, and by reason of such default, under the provisions of the contract, had become indebted to appellees for the invoice price of the goods; and therefore their

loss fell upon appellant, and not upon appellees. Answering that position, appellant contends that appellees, by virtue of the course of dealing between the parties with reference to making the monthly reports, waived such reports. The evidence showed, as we understand, without any substantial conflict, that at no time during the entire life of the contract did appellees demand from appellant the monthly reports provided in subdivision (c) of paragraph 4 of the contract, and notify appellant that on failure to make such reports appellees would stand on paragraph 5 of the contract. Instead of doing so, appellees accepted monthly statements from their traveling salesman, Mason, which, the evidence tended to show, contained substantially the reports that the contract provided that appellant should make.

Appellees were due to elect whether they would stand on that provision in the contract, and make the election before the goods were destroyed by the flood. So far as we have been able to ascertain, the entire correspondence by appellees before the destruction of the goods treated the goods as belonging to appellees, and not to appellant; and as held on consignment for sale by the latter. We think it was too late, after the goods were destroyed by the flood, for appellees to change its position so as to make appellant liable for their invoice price before sale to appellant's customers.

Reversed, and judgment for appellant.